# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DENNIS PALKON and HERBERT WILLIAMSON, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 2023-0449-JTL |
| GREGORY B. MAFFEI, ALBERT E. ROSENTHALER, MATT GOLDBERG, JAY C. HOAG, BETSY MORGAN, GREG O'HARA, JEREMY PHILIPS, TRYNKA SHINEMAN BLAKE, JANE JIE SUN, ROBERT S. WIESENTHAL, LARRY E. ROMRELL, J. DAVID WARGO, MICHAEL J. MALONE, CHRIS MUELLER, and CHRISTY HAUBEGGER, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| TRIPADVISOR, INC. and LIBERTY TRIPADVISOR HOLDINGS, INC., | ) ) ) | |
| Nominal Defendants. | ) | |

## MEMORANDUM OPINION DENYING
## APPLICATION FOR INTERLOCUTORY APPEAL

Date Submitted: March 11, 2024
Date Decided: March 21, 2024

Gregory V. Varallo, Andrew E. Blumberg, Mae Oberste, Daniel E. Meyer, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, Wilmington, Delaware; Kimberly A. Evans, Lindsay K. Faccenda, Irene R. Lax, Robert Erickson, BLOCK & LEVITON LLP, Wilmington, Delaware; Jeroen van Kwawegen, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, New York; Jeremy Friedman, David Tejtel, Christopher Windover, Lindsay La Marca, FRIEDMAN

OSTER & TEJTEL PLLC, Bedford Hills, New York; Jason Leviton, BLOCK & LEVITON LLP, Boston, Massachusetts; D. Seamus Kaskela, Adrienne Bell, KASKELA LAW LLC, Newtown Square, Pennsylvania; *Attorneys for Plaintiffs Dennis Palkon and Herbert Williamson.*

Kevin R. Shannon, J. Matthew Belger, Jaclyn C. Levy, Christopher D. Renaud, Justin T. Hymes, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Matthew W. Close, Jonathan B. Waxman, O'MELVENY & MYERS LLP, Los Angeles, California; Abby F. Rudzin, Asher Rivner, O'MELVENY & MYERS LLP, New York, New York; *Attorneys for Defendants Gregory B. Maffei, Albert E. Rosenthaler, Larry E. Romrell, J. David Wargo, Michael J. Malone, Chris Mueller, Christy Haubegger, and Nominal Defendant Liberty TripAdvisor Holdings, Inc.*

Bradley R. Aronstam, S. Michael Sirkin, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; John A. Neuwirth, Evert J. Christensen, Jr., Stefania D. Venezia, WEIL, GOTSHAL & MANGES LLP, New York, New York; *Attorneys for Defendants Matt Goldberg, Jay C. Hoag, Betsy Morgan, Greg O'Hara, Jeremy Philips, Trynka Shineman Blake, Jane Jie Sun, Robert S. Wiesenthal, and Nominal Defendant TripAdvisor, Inc.*

**LASTER, V.C.**

The court issued an opinion that largely denied the defendants' motion to dismiss (the "Opinion").[1] The defendants have asked the court to certify the order implementing the Opinion for interlocutory review.

This decision denies the application. Supreme Court Rule 42 requires that an interlocutory order meet strict criteria before being certified for interlocutory appeal. The order does not meet those criteria.

Of course, that does not prevent the Delaware Supreme Court from accepting the appeal. A trial court's ruling on an application for interlocutory appeal is only a recommendation. In particular, the justices will have their own sense of the public importance of the case, which Supreme Court Rule 42 does not invite a trial court to consider.

## I. FACTUAL BACKGROUND

The factual background is drawn from the Opinion. The facts are straightforward.

TripAdvisor, Inc. (the "Company") and Liberty TripAdvisor Holdings, Inc. ("Holdings") are both Delaware corporations. Each has issued both high-vote and low-vote shares. Gregory Maffei owns sufficient high-vote shares of Holdings to give him control, and Holdings owns sufficient high-vote shares of the Company to give it control. Maffei thus controls both entities.

---

[1] *Palkon v. Maffei*, --- A.3d ---, 2024 WL 678204 (Del. Ch. Feb. 20, 2024).

The boards of directors of both companies decided to convert them into Nevada corporations. Maffei delivered the vote at the Holdings level and caused Holdings to deliver the vote at the Company level. Neither board implemented any protections to simulate arm's length bargaining. Neither conversion was conditioned on either special committee approval or an unaffiliated stockholder vote.

Stockholder plaintiffs challenged the conversions. The defendants moved to dismiss the complaint, arguing that it failed to state a claim on which relief can be granted. The court issued the Opinion, which largely denied the motion.

The plaintiffs argued that Nevada law offers fewer litigation rights to stockholders and provides greater litigation protections to fiduciaries like directors and stockholder controllers. The plaintiffs alleged that the defendants approved the conversions to secure for themselves what they believed to be a materially reduced risk of stockholder litigation. The plaintiffs assembled a combination of sources to support their allegations, including the defendants' own public statements.

Because the complaint's allegations supported the inference that the conversions were interested transactions, the court held that they were subject to review for entire fairness.[2] The court also held that the conversions were inferably unfair.[3] Along the substantive dimension of the unitary entire fairness inquiry, the conversions inferably failed to provide stockholders with at least the substantial

---

[2] Op. at *1, *14.

[3] *Id.* at *17, *19.

2

equivalent of what they had before.[4] Along the procedural dimension of the unitary entire fairness inquiry, the conversions did not involve any efforts to replicate arm's length bargaining or otherwise protect minority stockholders.[5]

The court nevertheless dismissed the plaintiffs' request for injunctive relief.[6] The court held that it was not reasonably conceivable that an injunction would issue to prevent the conversions from closing.[7]

After the court entered an implementing order, the defendants filed an application asking the court to certify the implementing order for interlocutory appeal (the "Application"). The plaintiffs oppose that relief.

## II. LEGAL ANALYSIS

Supreme Court Rule 42 governs the certification of an interlocutory appeal. "[T]he purpose of Rule 42 is to prevent wasteful piecemeal litigation from overwhelming the docket of the Supreme Court."[8]

Rule 42 cautions that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and

---

[4] *Id.* at *17.

[5] *Id.*

[6] *Id.* at *23.

[7] *Id.* at *21–23.

[8] *Stein v. Blankfein*, 2019 WL 3311227, at *1 (Del. Ch. July 23, 2019).

3

can threaten to exhaust scarce party and judicial resources."[9] Certification is "generally not favored."[10] Thus, an application for interlocutory appeal "requires a strict analysis by the trial court."[11]

Rule 42 states that "[n]o interlocutory appeal will be certified by the trial court or accepted by this Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[12] To apply this test, the trial court first asks whether the interlocutory order decided a substantial issue of material importance. If that requirement is met, then the trial court must analyze whether "there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[13] The rule identifies eight factors relevant to the assessment.[14] Only if both criteria are met can the trial court certify the interlocutory appeal.

## A. Whether The Opinion Decided A Substantial Issue Of Material Importance

The first question a trial court must answer is whether the interlocutory order decided a substantial issue of material importance. "The 'substantial issue'

---

[9] Supr. Ct. R. 42(b)(ii).

[10] Supr. Ct. R. 42 cmt.

[11] *Chemours Co. v. DowDuPont Inc.*, 2019 WL 2404817, at *1 (Del. Ch. June 7, 2019).

[12] Supr. Ct. R. 42(b)(i).

[13] Supr. Ct. R. 42(b)(ii).

[14] Supr. Ct. R. 42(b)(iii)(A)–(H).

requirement is met when an interlocutory order decides a main question of law which relates to the merits of the case, and not to collateral matters."[15]

The Delaware Supreme Court has held that "an order directed to the pleadings falls within the class of interlocutory orders which are unappealable," unless the ruling "will . . . substantively affect the merits of a case or change the status of the parties . . . ."[16] Put differently, as a general matter, "[t]he substantial issue requirement is not met where no final determination was made on the merits of plaintiff's claims, but only that plaintiff would be afforded the right to pursue discovery related to the allegations of the complaint."[17] "Consistent with this paradigm, this Court has reasoned that an order denying a motion to dismiss a stockholder claim generally does not raise a substantial issue."[18]

---

[15] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2861717, at *1 (Del. Ch. July 22, 2008); *accord Castaldo v. Pittsburgh–Des Moines Steel Co.*, 301 A.2d 87, 87 (Del. 1973).

[16] *Levinson v. Conlon*, 385 A.2d 717, 720 (Del. 1978).

[17] *JB & Margaret Blaugrund Found. v. Guggenheim Funds Inv. Advisors*, 2023 WL 2562933, at *3 (Del. Ch. Mar. 17, 2023) (ORDER) (cleaned up).

[18] *Id.*; *see, e.g., Fannin v. UMTH Land Dev., L.P.*, 2020 WL 5198356, at *2 (Del. Ch. Aug. 28, 2020) (ORDER) (determining that the order did not decide a substantial issue of material importance because the order "merely decided, applying the liberal standard of [] Rule 12(b)(6), that the [c]omplaint stated a claim against the Appealing Defendants for breach of fiduciary duty."), *appeal refused sub nom. Etter v. Fannin*, 238 A.3d 193 (Del. 2020) (TABLE); *In re Tesla Motors, Inc. S'holder Litig.*, 2018 WL 2006678, at *3 (Del. Ch. Apr. 27, 2018) (ORDER) (determining that the order did not decide a substantial issue of material importance where plaintiff met its "minimal pleading-stage burden" to demonstrate controlling stockholder status and discovery could show otherwise), *appeal refused sub nom. Musk v. Ark. Tchr. Ret. Sys.*, 184 A.3d 1292 (Del. 2018) (TABLE); 2 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 18.04[b], at 18-12 (2d ed. & Sept. 2021 Supp.) ("[R]ulings found not to have determined a substantial issue include . . . the denial of a [] motion to dismiss a derivative suit in response to the recommendation of a special litigation committee . . . ." (citation omitted)); *see also*

5

The defendants assert that the Opinion decided a substantial issue because the court "decided the legal question at the heart of this dispute: what standard of review applies to a corporate move for potential enhanced litigation protection."[19] Both the Delaware Supreme Court and this court have rejected arguments that a pleading-stage ruling on the likely standard of review decided a substantial issue.[20]

The Opinion addressed the likely standard of review for pleading-stage purposes. The complaint adequately alleged that the benefit to the defendants was material because (i) "the defendant directors focused on the ability of the conversions to reduce or eliminate litigation risk," (ii) "[t]he board materials discussed those issues and called out past cases," and (iii) "the proxy statements told the stockholders that the directors were recommending the conversions to reduce or eliminate litigation risk."[21]

---

*Levinson*, 385 A.2d at 720 ("[T]he Court determined that an affirmative defense was not available, and the consequence of the decision was that the parties must proceed to trial, a ruling which our cases have held is not [a] basis for an interlocutory appeal.").

[19] App. ¶ 4.

[20] *See, e.g., MS Pawn Corp. v. Treppel*, 133 A.3d 560, 2016 WL 921933, at *1 (Del. 2016) (TABLE) (refusing interlocutory review of decision which denied a motion to dismiss and held that entire fairness might govern challenged transaction); *Reading Co. v. Trailer Train Co.*, 1984 WL 21202, at *1 (Del. Ch. June 7, 1984) (ORDER) (denying certification where order determined that business judgment rule applied at pleading stage, but had not "foreclosed" plaintiff from attempting to establish entire fairness "at a later stage in this lawsuit.").

[21] Op. at *14.

6

The Opinion did not make a final determination regarding the standard of review. The court left open the possibility that the defendants could show that Nevada law did not differ materially from Delaware law.[22] If the defendants make that showing, then entire fairness will not apply. The plaintiffs have not identified any other reason for the standard of review to intensify, so the business judgment rule would control, and the defendants would prevail.

The defendants seek to bolster their substantial-issue argument by asserting that the Opinion "created the prospect of prolonged, expensive litigation and an uncertain damages award."[23] That argument proves too much. Any denial of a motion to dismiss means that the case will proceed to discovery and could reach trial. That is particularly true for claims that inferably implicate the entire fairness standard. Crediting that argument would support interlocutory review whenever a motion to dismiss is denied, contrary to the final order doctrine and the regime that Supreme Court Rule 42 establishes.

Regardless, the defendants' assertion is not necessarily true. Whether the litigation becomes prolonged and expensive is up to them. They could choose to concede that they sought to take advantage of Nevada's laws and viewed those laws as conferring significant litigation protections, consistent with their contemporaneous disclosures. If they do, then the need for fact discovery and the

---

[22] *Id.*

[23] App. ¶ 6.

7

presentation of evidence about what the defendants thought or believed will be limited. The case will become more prolonged and expensive only if the defendants seek to walk away from their contemporaneous disclosures. If they do, that is their choice.

The case also need not become prolonged or expensive over of the comparison between Delaware and Nevada law. During oral argument on their motion to dismiss, the defendants suggested that they might seek to show that Nevada law and Delaware law are functionally equivalent.[24] The defendants need not hire experts to make that showing, because under Delaware Rule of Evidence 202(a)(1), "[e]very court in this State may take judicial notice of the common law, case law and statutes of the United States and every state, territory and jurisdiction of the United States." Of course, the defendants might *choose* to proffer an expert on this topic, and under Delaware Rule of Evidence 202(b), "[t]he court may inform itself of the laws identified in paragraph (a) of this Rule in any manner that it deems proper." The case will become more prolonged and expensive only if the defendants choose to retain experts on Nevada law. If they do, that is again their choice.

Admittedly, there is one area where expert testimony will be necessary. The Opinion indicated that the court would likely look to the stock price reaction (if any) to the conversion proposals as an indication of whether and to what extent the market

---

[24] *See Palkon v. Maffei (Oral Argument)*, C.A. No. 2023-0449-JTL, at 13–17, 56–58 (Del. Ch. Nov. 8, 2023).

reaction suggested harm.[25] But even that analysis is not particularly challenging for a qualified expert. Event studies are common. That aspect of the case need not make this matter prolonged or expensive.

Consequently, as entire fairness cases go, this case is relatively unlikely to involve prolonged, expensive litigation. And any potential damages award is also less uncertain than in most entire fairness cases. By suggesting the market reaction would provide a baseline, the court has given the defendants a sense of the potential exposure.

The defendants' assertions about "the prospect of prolonged, expensive litigation and an uncertain damages award" thus not only fail to provide a basis for interlocutory appeal generally, they are also relatively inaccurate characterizations of this case.

The defendants also seek to bolster their argument for interlocutory appeal by asserting that the Opinion "precludes any allegedly controlled company from leaving the State without satisfying entire fairness review . . . ."[26] The defendants reach that conclusion by observing that to satisfy the *MFW* standard, a controlled company must form a special committee of disinterested directors. The defendants argue that "under the Court's reasoning, it is unclear when, if ever, there would be directors who are

---

[25] Op. at *22.

[26] App. ¶ 7.

disinterested in a decision to move to a jurisdiction that provides greater litigation protection to those directors."[27]

The taint of alleged self-interest that the Opinion credited resulted from the inferably material reduction in litigation exposure that a fiduciary who otherwise would continue to serve under a Delaware regime could achieve by moving to a Nevada regime. The equation has two variables: (i) serving as a corporate fiduciary under Nevada law in lieu of (ii) otherwise serving as a corporate fiduciary under Delaware law. To remove the taint, remove one variable.

One answer is to attack the problem from the post-conversion side. Directors who do not continue with the corporation after the conversion will not benefit from any greater litigation protection and would not be interested in the outcome. The directors appointed to the special committee could submit resignations that would become effective if the conversion were approved.[28] Because they would not serve on the board of the post-conversion entity, they would not benefit from the legal protections offered by the post-conversion regime. The members of the special committee would not be interested, at least as a result of the conversion.

Or attack the problem from the pre-conversion side. Just as boards often appoint new directors when forming a special litigation committee, a board could add

---

[27] *Id.*

[28] *See* 8 *Del. C.* § 141(b) ("A resignation is effective when the resignation is delivered unless the resignation specifies a later effective date or an effective date determined upon the happening of an event or events.").

directors to consider the conversion. Those directors might (i) submit resignations that would become effective if the conversion was *not* approved, eliminating any prospect that they would continue as directors under the existing regime and (ii) recuse themselves from any decisions other than considering the conversion, eliminating any exposure for those decisions under the existing regime. With that combination, it would be hard for a plaintiff to argue that the new directors were gaining any relative benefit from moving to the new jurisdiction, because the new directors would never face the prospect of continuing to serve unless the corporation moved to the new jurisdiction. And the new directors would not have served meaningfully as directors under the existing regime (other than to approve the conversion itself).

Those are only two examples. Both would be obvious to the defendants' sophisticated lawyers, which suggests that that their protestations of bewilderment could be tactical. There may well be other ways to structure a committee so that its members are not inferably interested in a jurisdictional move. The existence of at least two ways negates the defendants' contention that entire fairness necessarily will apply whenever controlled corporations seek to leave Delaware.

Finally, the defendants assert that the Opinion decided a substantial issue because "thousands of other Delaware corporations . . . need certainty as to the rules that apply to a decision to reincorporate in another jurisdiction."[29] That statement

---

[29] App. ¶ 22.

implies that thousands of Delaware corporations will be considering that issue, thereby subtly alluding to the disproportionate media attention that the Opinion received after Elon Musk's high-profile comments about forsaking Delaware.

Rule 42 does not invite a trial court to consider the level of media attention that a decision has received. That does not mean that the Delaware Supreme Court could not consider it. The justices might conclude that given the media attention and practitioner-driven stormlets over Delaware's place in the corporate universe, Delaware's highest court should weigh in. But that is not a consideration that Rule 42 instructs a trial court to take into account.

The denial of a motion to dismiss claims challenging a self-interested transaction does not constitute a substantial issue. The threshold requirement for certification is not met.

## B. Whether The Opinion Merits Appellate Review Before A Final Judgment

A ruling addressing a substantial issue is a necessary but not sufficient condition for the certification of an interlocutory appeal. The trial court's ruling also must "merit[] appellate review before a final judgment."[30] When analyzing that issue, Rule 42(b)(iii) instructs trial courts to consider eight factors. The defendants rely on four, but they group two of the factors together, resulting in three distinct arguments.

---

[30] Supr. Ct. R. 42(b)(i).

12

Because the Opinion did not decide a substantial issue, this decision could stop there. But a trial court's ruling under Section 42 merely offers a recommendation to the Delaware Supreme Court, so the justices may want to have the benefit of the trial court's views on the other elements of the application. Out of an abundance of caution, this decision therefore considers the defendants' arguments under Rule 42(b)(iii).

### 1. Whether The Opinion Involves A Question Of First Impression

The defendants start with factor (A), which asks whether the "[i]interlocutory order involves a question of law resolved for the first time in this State."[31] That factor does not support interlocutory review.

To satisfy factor (A), the defendants assert that "no other Delaware court has addressed whether and under what circumstances a company's move to a state affording some greater litigation protection for potential future cases based on hypothetical future facts constitutes a non-ratable benefit material enough to trigger entire fairness review."[32] The defendants then that in prior cases, "the fiduciaries sought greater litigation protection for the specific purpose of defeating specific claims."[33] They also contend that in prior cases, "the transaction at issue threatened to extinguish, rather than just limit, stockholder claims."[34]

---

[31] Supr. Ct. R. 42(b)(iii)(A).

[32] App. ¶ 9.

[33] *Id.* ¶ 11.

[34] *Id.* ¶ 12.

13

These assertions advance two ideas. One is that no Delaware court has previously addressed the fiduciary standards that apply when a corporation moves to another state that would provide fiduciaries with a more protective legal regime. The other is that unlike prior decisions, the Opinion held that a fiduciary could receive "a material non-ratable benefit from potentially greater litigation protection when (i) there is no pending or threatened litigation and (ii) the greater protection would not altogether extinguish the prospect of litigation."[35]

The application of settled law to new facts does not mean that the court decided a question of first impression.[36] The Opinion did not apply new legal principles when it issued a pleading-stage ruling on what standard of review would apply to the conversions. Although the Company and Holdings seek to leave Delaware using Section 266 of the Delaware General Corporation Law, that statute achieves the functional equivalent of a direct, forward stock-for-stock merger between a Delaware corporation and a Nevada corporation. The application of entire fairness to an interested merger is not a novel issue. Nor is the application of entire fairness to a

---

[35] *Id.* ¶ 10.

[36] *See Riker v. Teucrium Trading, LLC*, 2023 WL 4411609, at *2 (Del. Ch. July 7, 2023) ("[T]he Ruling did not present an issue of first impression; it considered a factual situation that has some differences from applicable precedent.").

merger that confers litigation protections on the fiduciary defendants who approved it.[37] Nor is a challenge to an-outbound merger that confers litigation protections.[38]

The Opinion also did not address a new issue by focusing on the materiality of a reduction in the litigation risk.[39] Using a materiality standard to evaluate interestedness is not novel.[40]

The defendants assert that applying a materiality standard to litigation risk departed from how Delaware precedents had addressed the issue. That aspect of their

---

[37] *E.g., In re AmTrust Fin. Servs., Inc. S'holder Litig.*, 2020 WL 914563, at \*11–12 (Del. Ch. Feb. 26, 2020) (holding that plaintiff pled that merger conferred a non-ratable benefit on defendants by extinguishing stockholder standing to bring a derivative claim that threatened defendants with damages that would be material to them personally); *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2018 WL 3120804, at \*13 (Del. Ch. June 25, 2018) (crediting that stockholder plaintiffs had stated a direct claim against defendants who extracted non-ratable benefits through a settlement agreement); *In re Riverstone Nat'l, Inc. S'holder Litig.*, 2016 WL 4045411, at \*1 (Del. Ch. July 28, 2016) (finding that a complaint adequately alleged that by extinguishing stockholder standing to bring a threatened but not yet pending lawsuit, "a majority of the Defendant directors received a material benefit from the merger not shared by the common stockholders."); *In re Primedia, Inc. S'holders Litig.*, 67 A.3d 455, 487 (Del. Ch. 2013) (same); *see also Morris v. Spectra Energy P'rs (DE) GP, LP*, 246 A.3d 121, 134–35 (Del. 2021) (adopting *Primedia* framework).

[38] *See Harris v. Harris*, 2023 WL 115541, at \*8–9 (Del. Ch. Jan. 6, 2023) (considering allegations of interest arising from the alleged reduction in litigation exposure due to the loss of stockholder standing resulting from the merger of a Delaware corporation with a New Jersey corporation).

[39] *Compare* App. ¶ 12–13.

[40] *E.g., United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021) (material personal benefit); *Chester Cty. Empls.' Ret. Fund v. New Residential Inv. Corp.*, 186 A.3d 798, 2018 WL 2146483, at \*1 (Del. 2018) (TABLE) (same); *Cede & Co. v. Technicolor, Inc. (Technicolor Appraisal II)*, 634 A.2d 345, 364 (Del. 1993) (same), *decision modified in part on reargument*, 636 A.2d 956, 957 (Del. 1994) (same).

15

novel-issue argument is really an argument that the Opinion conflicts with prior rulings. This decision addresses it under that factor.

Factor (A) of Rule 42(b)(iii) therefore does not support certification. The Opinion applied settled principles of law to hold that a transaction that confers material benefits on corporate fiduciaries is subject to the entire fairness test. That is not an issue of first impression.

### 2. Whether Decisions Of The Trial Courts Conflict

The defendants next rely on factor (B), which supports certification when "[t]he decisions of the trial courts are conflicting upon the question of law."[41] Whether the cases conflict depends how one interprets prior cases. On balance, this factor does not support interlocutory review.

As discussed in the preceding section, the Opinion drew a pleading-stage inference that the defendants sought to obtain a material reduction in litigation risk from the conversions.[42] The defendants insist that under prior cases, interestedness from reduced litigation exposure can only result if *both* (i) the conduct giving rise to the claim had already happened, and (ii) the transaction completely extinguished (rather than just reduced) the scope of the litigation exposure.[43]

---

[41] Supr. Ct. R. 42(b)(iii)(B).

[42] Op. at *14.

[43] App. ¶¶ 10–13.

Whether conduct has already happened and whether the claims were extinguished are certainly two factors that could cause a reduction in litigation risk to be material, but they are not the only ones. The defendants' characterizations of prior cases also dial up both factors to extremes.[44] As the Opinion explained, the defendants' overly simplistic reading of precedent would render Delaware law "piteously naive."[45]

Imagine a graph with two axes. The vertical axis identifies the degree of reduction in litigation exposure and ranges from 0% (no change) to 100% (total extinguishment). The horizontal axis is a measure of how viable the case is, ranging from 0% (not viable at all) to 100% (sure winner). There are an infinite number of points where the combination can be material, and an infinite number of points where it won't be. For example, a 100% reduction in a 0% risk will be immaterial, because there was never any risk to begin with. A 50% reduction in a 5% risk should not be material, because the risk doesn't change much. For the same reason, a 5% reduction in a 50% risk should not be material. Other combinations will be material.

The defendants claim that under previous cases, only a 100% risk reduction can ever be material.[46] That unrealistically sets the bar at the highest possible level. A reduction in litigation risk short of 100% can certainly be material.

---

[44] App. ¶¶ 10–13, 15–17.

[45] Op. at *9.

[46] App. ¶ 17.

17

The defendants also assert that when evaluating how viable a claim is, the cases only look to whether the events giving rise to a claim have happened or not.[47] But whether the events have happened already is not a reliable proxy for the strength of a claim. Because of timeliness doctrines like laches and the statute of limitations, events that have happened already may be unable to support a viable claim. By contrast, if parties regularly engage in conduct that carries a significant risk of litigation, or if they anticipate doing so, then the likelihood of meaningful litigation over future conduct may be quite high, even though the events have not happened yet. Here, for example, the plaintiffs argued that the defendants intended to take the Company or Holdings private and wanted to move to Nevada before doing so.[48] The defendants vehemently rejected that allegation as unduly speculative.[49] Then one of Maffei's affiliates announced that he had approached the Company and Holdings about a going-private transaction.[50]

And there are other factors that could influence the viability of a claim. One obvious consideration is whether the claim implicates the duty of care or the duty of loyalty. Section 102(b)(7) of the Delaware General Corporation Law authorizes charter provisions that exculpate directors (and, to a lesser degree, officers) for the

---

[47] *Id.* ¶¶ 15–17.

[48] *Oral Argument*, 2023-0449-JTL, at 50–51.

[49] *Id.* at 7–10.

[50] Op. at *5.

former but not the latter.[51] In the face of an exculpatory provision, a claim for breach

of the duty of care does not support a meaningful threat of liability.[52] Even without

an exculpatory provision, a plaintiff must establish gross negligence, which in the

corporate context really means recklessness.[53] Even if the events allegedly giving rise

---

[51] *See* 8 *Del. C.* § 102(b)(7).

[52] *Zuckerberg*, 262 A.3d at 1054..

[53] *In re McDonald's Corp. S'holder Derivative Litig.*, 291 A.3d 652, 689 (Del. Ch. 2023) ("In the corporate context, gross negligence has its own special meaning that is akin to recklessness."); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 n.45 (Del. Ch. 2008) ("[T]he definition [of gross negligence in corporate law] is so strict that it imports the concept of recklessness into the gross negligence standard ...."); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at \*4 (Del. Ch. Aug. 26, 2005) ("Gross negligence has a stringent meaning under Delaware corporate (and partnership) law, one which involves a devil-may-care attitude or indifference to duty amounting to recklessness." (cleaned up)); *Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607, at \*12 (Del. Ch. Apr. 5, 1990) ("In the corporate context, gross negligence means reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason." (cleaned up)).

In civil cases not involving business entities, the Delaware Supreme Court has defined gross negligence as "a higher level of negligence representing 'an extreme departure from the ordinary standard of care.'" *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990) (quoting W. Prosser, *Handbook of the Law of Torts* 150 (2d ed. 1955)). This test "is the functional equivalent" of the test for "[c]riminal negligence." *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 530 (Del. 1987). By statute, Delaware law defines "criminal negligence" as follows:

> A person acts with criminal negligence with respect to an element of an offense when the person fails to perceive a risk that the element exists or will result from the conduct. The risk must be of such a nature and degree that failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

11 Del. C. § 231(a). The same statute provides that a person acts recklessly when "the person is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct." *Id.* § 231(e). As with criminal negligence, the risk "must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id.; see id.* § 231(a). Under this framework, gross negligence "signifies more than ordinary inadvertence or inattention," but it is "nevertheless a degree of negligence, while recklessness connotes a different type of conduct akin to the intentional infliction of harm." *Jardel*, 523

to a care claim have already occurred, the claim is unlikely to present a meaningful risk of liability in the first place, so the implications of risk reduction will often be immaterial.

Yet the defendants insist that under Delaware law, a reduction in litigation risk can only give rise to interestedness if *both* (i) the risk is completely extinguished and (ii) the conduct has already happened.[54] For that proposition, the defendants rely principally on *Orloff v. Shulman*,[55] and *Sutherland v. Sutherland*.[56] The Opinion explained why that interpretation of *Orloff* and *Sutherland* is incorrect.[57] Both cases involved mid-stream adoptions of Section 102(b)(7) provisions that exculpated directors for breaches of the duty of care.[58] As discussed previously, care claims generally do not present a meaningful risk of liability, even when the events have already happened, so adopting an exculpatory provision does not change the status quo by extinguishing what is likely an immaterial risk. Moreover, by authorizing exculpatory provisions, the General Assembly made a determination that foreclosing

---

A.2d at 530. The comparison shows the protectiveness of Delaware's corporate law standard: To hold a director liable for gross negligence requires conduct more serious than what is necessary to secure a conviction for criminal negligence.

[54] *Id.* ¶¶ 10, 17.

[55] 2005 WL 3272355 (Del. Ch. Nov. 23, 2005).

[56] 2010 WL 1838968 (Del. Ch. May 3, 2010).

[57] *See* Op. at *12.

[58] *Sutherland*, 2010 WL 1838968, at *14–15; *Orloff*, 2005 WL 3272355, at *6, *14.

monetary liability for breaches of the duty of care confers net benefits on corporations and their stockholders.[59] It follows that adopting a Section 102(b)(7) provision is not a presumptively self-interested act and does not inferably confer a material and non-ratable benefit, because the directors' interest in obtaining care-based exculpation align with the stockholders' interests in providing it.

Loyalty is different. Exculpation for duty of loyalty claims is "inconsistent with the public policy of this State to hold fiduciaries accountable for breaches of the duty of loyalty."[60] An inferably material reduction in potential liability for breaches of the duty of loyalty confers a benefit on a director and renders that director interested. The plaintiffs allege that the conversions materially reduce the defendants accountability for breaches of the duty of loyalty. *Orloff* and *Sunderland* are therefore distinguishable.

The defendants also imply that under the Opinion's logic, a board's decision to use company funds to purchase D&O insurance would be subject to entire fairness review.[61] The Opinion did not say that. As with Section 102(b)(7), Delaware law specifically authorizes insurance, reflecting a public policy determination that

---

[59] *See Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1052 (Del. Ch. 1996) ("[I]t is in the shareholders' economic interest to offer sufficient protection to directors from liability for negligence, etc., to allow directors to conclude that, as a practical matter, there is no risk that, if they act in good faith and meet minimal proceduralist standards of attention, they can face liability as a result of a business loss.").

[60] *CCSB Fin. Corp. v. Totta*, 302 A.3d 387, 401 (Del. 2023).

[61] App. ¶ 13.

securing D&O insurance generally benefits corporations and their stockholders, both by encouraging qualified directors to serve and by providing a source of funds for a potential recovery.[62]

At bottom, the defendants want bright-line rules to dictate when equity will provide a remedy. Making that demand express, they complain that "[t]he Court's decision thus leaves uncertain the question of what nature and degree of risk reduction constitutes sufficient benefit to trigger entire fairness review."[63]

Issues of materiality are often fact-intensive.[64] The level of uncertainty created by the Opinion is no different than in any case applying a materiality standard at the pleading stage.

More broadly, claims for breach of fiduciary duty sound in equity.[65] The purpose of equity is to ameliorate "any harsh or otherwise undesirable effects resulting from the strict application of any particular rule of law,"[66] not to impose

---

[62] *See* 8 *Del. C.* § 145(g).

[63] App. ¶ 12.

[64] *See, e.g.*, *Acela Invs. LLC v. DiFalco*, 2019 WL 2158063, at *31 (Del. Ch. May 17, 2019) ("Relatedly, in the context of interested director transactions, only 'sufficiently *material'* interests can rebut the business judgment rule presumption, the determination of which is a 'fact- dominated question.'" (quoting *Technicolor Appraisal II*, 634 A.2d at 364)).

[65] *Lebanon Cty. Empls.' Ret. Fund v. Collis*, 287 A.3d 1160, 1196 (Del. Ch. 2022) ("[A] claim for a breach of fiduciary duty is an equitable tort.").

[66] Howard L. Oleck, *Historical Nature of Equity Jurisprudence*, 20 Fordham L. Rev. 23, 24 (1951); *see Holland v. Florida*, 560 U.S. 631, 650 (2010) ("We have said that courts of equity must be governed by rules and precedents no less than the courts of law. But we have also made clear that often the exercise of a court's equity powers must be made on a case-by-case basis. In emphasizing the need for flexibility, for avoiding mechanical rules, we have

strict rules of law of its own. To the contrary, "a court of equity generally does not favor bright-line rules, instead using its discretion to make decisions on a case-by-case basis."[67] That necessarily results in some lack of clarity, but "[t]his unclarity, one should be quick to note is to a large extent inherent in ex post fiduciary review and there is good reason to suppose it can be efficient."[68]

The defendants can only argue that the Opinion conflicts with other cases by adopting an extreme reading of those precedents. There is no conflict, and this factor does not support interlocutory review.

---

followed a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity." (cleaned up)).

[67] *Park Empls.' & Ret. Bd. Empls.' Annuity & Benefit Fund of Chi. v. Smith*, 2016 WL 3223395, at \*10 (Del. Ch. May 31, 2016), *aff'd*, 175 A.3d 621 (Del. 2017); *see Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 493 n.13 (Del. Ch. 2022) ("Equity has generally favored standards, and one of the traditional roles of equity has been to deploy fact-specific equitable doctrines to mitigate the sometimes harsh outcomes that a brightline rule of law can produce."); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 728 A.2d 25, 52 n.105 (Del. Ch. 1998) ("[E]quitable and fiduciary principles . . . by their nature are highly fact specific and particularized . . . ."), *aff'd sub nom. Quickturn Design Sys., Inc. v. Shapiro*, 721 A.2d 1281 (Del. 1998).

[68] *Equity-Linked Invs., L.P. v. Adams*, 705 A.2d 1040, 1055 n.48 (Del. Ch. 1997) (Allen, C.). And at the extreme, it can lead to Selden's epigram about the length of the Chancellor's foot. John Selden, "Equity," *Table Talk* (1669). But as I have explained at length elsewhere, that seventeenth century sound bite does not describe modern equity. "[T]hat characterization of equity had lost its force by the beginning of the nineteenth century, if not before, and both Pomeroy and Story demolished it in their treatises. Today, consistent with the famous maxim, "[e]quity follows the law." *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 98 A.3d 135, 144 (Del. Ch. 2014) (citations omitted), *aff'd*, 114 A.3d 1246 (Del. 2015).

### 3. Whether Review Would Terminate The Litigation And Serve Considerations Of Justice

As their final basis for interlocutory appeal, the defendants invoke two factors together: factor (G), which asks whether "[r]eview of the interlocutory order may terminate the litigation,"[69] and factor (H), which asks whether "[r]eview of the interlocutory order may serve considerations of justice."[70] That combination does not support interlocutory review.

For purposes of factor (G), the defendants point out that if the Delaware Supreme Court holds that the business judgment rule applies to the conversions, then the case should be dismissed.[71] That is likely true. Without the inference of self-interest deriving from the inferably greater litigation protections that Nevada law provides, the plaintiffs have not alleged any grounds to rebut the protections of the business judgment rule. But this argument again proves too much. The prospect of a dismissal grounded on the business judgment rule often will be available when a court denies a motion to dismiss because it is reasonably conceivable that a higher standard of review could apply. Relying regularly on that truism would result in automatic interlocutory appeals from opinions that denied motions to dismiss where the defendants argued that the business judgment rule applied. That is not what Rule 42 contemplates.

---

[69] Supr. Ct. R. 42(b)(iii)(G).

[70] Supr. Ct. R. 42(b)(iii)(H).

[71] App. ¶ 19.

For purposes of factor (H), the defendants argue that an immediate appeal would serve considerations of justice by allowing the Delaware Supreme Court to address threshold issues of law now, before the parties undergo an extensive effort to litigate this matter to conclusion.[72] The possibility that a reversal could save litigation costs "is not unique to [this] application and would otherwise warrant certification after nearly every trial court decision even in cases lacking 'exceptional' circumstances."[73] Moreover, for reasons discussed previously, this matter is likely to require relatively less extensive litigation efforts than other entire fairness cases.

Finally, the defendants contend that respect for "principles of comity" warrants interlocutory appeal.[74] The defendants say the Opinion disrespected principles of comity because "[t]he Court found it 'reasonably conceivable' that a share in a Nevada corporation is inherently less valuable than a share in a Delaware corporation simply because Nevada law is different."[75] Not quite. As the Opinion explained, nothing about the ruling turns on anything about Nevada as a state.[76] If the Company and Holdings were converting into Delaware LLCs whose internal governance regimes

---

[72] *Id.* ¶ 20.

[73] *In re Carvana Co. S'holders Litig.*, 2022 WL 4661841, at *4 (Del. Ch. Oct. 3, 2022).

[74] App. ¶ 21.

[75] *Id.*

[76] Op. at *2.

paralleled Nevada law, then the outcome would be the same.[77] The allegations about the substance of the post-conversion legal framework generate the result, not whether it was created by Nevada legislators or Delaware lawyers.

Relatedly, the defendants contend that "[h]olding a trial to quantify the purported 'harm' suffered by stockholders if they become owners of a corporation governed by Nevada law rather than Delaware law would require passing judgment on the different balance struck by the two States."[78] They imply that principles of comity should foreclose any possibility of implicit interstate criticism.

Here again, the Opinion did not offer any criticisms of Nevada law.[79] The Opinion drew an inference based on the allegations of the complaint, which included the defendants' own statements. At oral argument, the defendants asserted that Nevada and Delaware law are substantively identical,[80] and they may attempt to show that at a later stage of the case. If that is true, then they will win. Regardless, as the Opinion also explained, the court does not intend to value the corporations as Delaware entities and then value them again as Nevada entities.[81] The court intends to (i) determine if there are differences between Delaware and Nevada law, then (ii)

[77] *Id.*

[78] App. ¶ 21.

[79] Op. at *2.

[80] *Oral Argument*, 2023-0449-JTL, at 13–17, 56–58.

[81] *Id.* at *22.

26

look to the market reaction, if any.[82] If the defendants are correct that, on net, Nevada law benefits stockholders, then the defendants will again prevail.

This is not a case where the interests of justice require early stage intervention by the Delaware Supreme Court. It is a case where the Delaware Supreme Court would benefit from considering these issues on a more developed record, after any differences between Delaware law and Nevada law have been explored.

## C.     The Balancing

As a final step, Rule 42 directs the trial court to engage in balancing:

> After considering [the eight] factors and its own assessment of the most efficient and just schedule to resolve the case, the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice. If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal.[83]

There must be "substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[84] Although the prior steps are again dispositive, this decision considers the balancing in the interest of completeness.

Assuming for the sake of argument that grounds for interlocutory appeal existed, then the balancing would be a close call. It is always helpful to have the Delaware Supreme Court's views on an issue. Plus, as the defendants point out, a reversal could end up saving everyone the effort to litigate the case. But those benefits

---

[82] *Id.*

[83] Supr. Ct. R. 42(b)(iii).

[84] Supr. Ct. R. 42(b)(ii).

are not unique to this case. What this case lacks is a particular reason why an appeal should happen now that would distinguish it from other denials of motions to dismiss.

According to the plaintiffs, the Application should be denied for the additional reason that it effectively seeks an advisory opinion from the Delaware Supreme Court that will not confer substantial benefits on anyone.[85] As the plaintiffs point out, the Company and Holdings publicly disclosed that they are exploring a going-private transaction with one of Maffei's affiliates that would render the case moot.[86] But the court previously asked the parties how they wanted to proceed in light of the defendants' announcement, and both sides asked the court to render its decision.[87] There is no difference between the Court of Chancery ruling in the shadow of a going-private transaction and the Delaware Supreme Court doing so. The plaintiffs waived any objection to the case proceeding while the going-private discussions take place.

On balance, there are not substantial benefits from an interlocutory appeal that outweigh its costs. In that setting, Rule 42(b)(iii) instructs the trial court to deny certification.

## III.   CONCLUSION

Ultimately, whether to permit an interlocutory appeal lies in the discretion of the Delaware Supreme Court. The justices' views, not the trial court's, determine

---

[85] Opp. ¶¶ 2, 5.

[86] *Id.* ¶ 2.

[87] *Palkon v. Maffei*, C.A. No. 2023-0449-JTL, at 6–10 (Del. Ch. Feb. 13, 2024) (TRANSCRIPT); Op. at *5–6.

whether the defendants' request will be granted. This court's role under Rule 42 is to make a recommendation. In this case, that recommendation is for the Delaware Supreme Court to refuse the interlocutory appeal.